UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

RICARDO ORTIZ,

                               16-cv-4412

               *Plaintiff*,

        -against-                **COMPLAINT**

CAFÉ 71, INC., CAFÉ 71,
ALEXANDER ZARWI,
BALWINDER SINGH and
KADRA ZARWI,

               *Defendants.*
_____


      Plaintiff Ricardo Ortiz ("Plaintiff"), by his attorneys, the Law Offices of Scott A. Lucas, alleges as follows for his Complaint against Defendants Café 71, Inc., Café 71, Alexander Zarwi, Balwinder Singh and John Doe.   The above-named Defendants are referred to herein as "Defendants" by virtue of their status as joint employers of Plaintiff:


### INTRODUCTION

    1.    This case is about an employer that willfully paid a subminimum wage and no overtime to a dishwasher and delivery person who worked 66 hours a week.

2.     Plaintiff brings this action to recover unpaid minimum wages, unpaid overtime, unpaid spread-of-hours pay, and liquidated damages.

3.     The wage and hour violations described herein were willful and were carried out systematically in violation of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and New York Labor Law ("NYLL") articles 19, § 650, *et seq.*, and 6, § 190, *et seq.* and Part 146 of Title 12 of New York's Codes, Rules and Regulations ("N.Y. Comp.Codes R. & Regs.").

## JURISDICTION & VENUE

4.     This Court possesses subject matter jurisdiction over Plaintiff's FLSA claims under 29 U.S.C. § 216(b), 28 U.S.C. § 1331 and 28 U.S.C. § 1337, and supplemental jurisdiction over Plaintiff's NYLL claims under 28 U.S.C. § 1367.

5.     The events and omissions giving rise to the claims herein occurred in this judicial district.  Venue is proper under, *inter alia*, 28 U.S.C. § 1391.

## THE PARTIES

6.     Plaintiff Ricardo Ortiz is a resident of the State of New York residing at 350 East 109th Street, Apt. 5S, New York, NY 10029.

7.      Defendant Café 71, Inc. is a corporation organized and existing under the laws of the State of New York, having its principal place of business at 2061 Broadway, New York, NY 10023.

8.      Upon information and belief, Defendant Café 71 is a business organization operating, by and through the individual defendants, in the United Kingdom and in New York at 2061 Broadway, New York, NY 10023.

9.      Café 71, Inc. and Café 71 are referred to herein collectively as the "Restaurant."

10.      Defendant Alexander Zarwi is an individual who, upon information and belief, resides, *inter alia,* at Park Street in Tenafly, New Jersey.

11.      Defendant Balwinder Singh an individual whose address is not currently known to Plaintiff.

12.      Defendant Kadra Zarwi is an individual who, upon information and belief, resides, *inter alia,* at Park Street in Tenafly, New Jersey.


## FACTS

13.      The Restaurant is a "restaurant" as that term is defined by 12 N.Y. Comp.Codes R. & Regs. § 146-3.1 because, *inter alia*, it is an "eating or

3

drinking place that prepares and offers food or beverage for human consumption either on any of its premises or by such service as catering, banquet, box lunch, curb service or counter service to the public, to employees, or to members or guests of members, and services in connection therewith or incidental thereto."

14.   The Restaurant was at all material times herein an employer of Plaintiff.

15.   The Restaurant was at all material times herein the entity through which the individual defendants maintained and controlled the terms and conditions of Plaintiff's employment.

16.   Upon information and belief, the individual defendants were at all material times herein owners of the Restaurant.

17.   Upon information and belief, Defendant Alexander Zarwi was at all material times herein the Restaurant's President.

18.   Defendant Alexander Zarwi was at all material times herein a principal operator of the Restaurant.

19.   Defendant Alexander Zarwi was at all material times herein a principal manager of the Restaurant.

20.     At all material times herein, Defendant Alexander Zarwi was typically present at the Restaurant for 14 out of every 18 days (14 consecutive days at the Restaurant, followed by four days off).

21.     While he was present at the Restaurant, Alexander Zarwi managed employees and operated the register.

22.     While he was present at the Restaurant, Alexander Zarwi assigned work to Plaintiff (e.g., telling him to clean up and wash dishes).

23.     During Plaintiff's employment the Restaurant had at least five cameras, and a television located in the management office that was always recording to facilitate a very high level of oversight by Defendants of the Restaurant's employees, including Plaintiff.

24.     Upon information and belief, the Restaurant's video monitoring system was also sufficient to allow, and did allow, the individual Defendants to participate in overseeing the Restaurant's operations remotely when they were away from the Restaurant.

25.     Upon information and belief, the individual regularly on the restaurant's premises who is generally referred to as Alexander Zarwi's "partner" is named Balwinder Singh.

5

26.    Alexander Zarwi and Balwinder Singh routinely discussed with each other how much to pay the restaurant's employees.

27.    Balwinder Singh was the more active of the "partners" when it came to matters of employee discipline, as he routinely fired and disciplined employees of the Restaurant.

28.    Upon information and belief, Defendants Alexander Zarwi and Kadra Zarwi are and were at all material times herein husband and wife.

29.    Upon information and belief, Defendants Alexander Zarwi and Kadra Zarwi are and were at all material times herein united in interest, and often acted through Alexander Zarwi.

30.    At all material times herein, Balwinder Singh and Kadra Zarwi were the Restaurant's principals, and were and are identified as such on the Restaurant's liquor license.

31.    As such, it is reasonable to infer that Balwinder Singh and Kadra Zarwi had a direct financial interest in the conduct that violated the wage and hour laws referenced herein — i.e., that financial benefits flowed to them because of the violative conduct.

32.     Upon information and belief, as principals of a smaller commercial establishment, rather than, say, a Fortune 500 company where corporate ownership and its incidents are dispersed among thousands of people, Balwinder Singh and Kadra Zarwi have the authority to control where the Restaurant's funds go.

33.     Upon information and belief, at all material times herein the individual Defendants directly (Alexander Zarwi and Balwinder Singh) and indirectly (Kadra Singh) exercised significant managerial control over the terms and conditions of employment of the Restaurant's employees, including, without limitation, assigning work, determining compensation, imposing discipline, hiring and firing, and, upon information and belief, maintaining such scant and legally inadequate employment and compensation records as they saw fit to create.

34.     Accordingly, it is, upon information and belief, at all material times herein the individual Defendants caused and facilitated Defendants' practice of failing to pay minimum wages, overtime and spread-of-hours pay, and failing to provide and maintain statutorily-required records.

7

35.     The right and an ability to control plus a direct financial benefit may additionally be inferred consistent with the Court's "judicial experience and common sense" under *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

36.     Upon information and belief, by comparing Plaintiff's general knowledge of the Restaurant's pricing and frequency of sales (from which annual revenues of *well over $500,000* can be estimated, albeit roughly), with: (A) internet data gleaned from multiple sources regarding the Restaurant's *reported* revenues (which indicate that the Restaurant's *reported* annual revenues are only about $200,000), Defendants are and have been understating the Restaurant's annual revenue by several hundred thousand dollars; and (B) knowledge of the number of employees (approximately 20), and the fact that Defendants could not even hope to cover their annual payroll expenses (much less any of their other expenses) based on annual revenues in the $200,000 range.

37.     Upon information and belief, Defendants Alexander Zarwi and Kadra Zarwi have taken steps to shield themselves from liability for unpaid wages and to make themselves judgment-proof by, *inter alia*, setting up and placing much of their most valuable property in a trust known as the Alexander and Kadra Zarwi Trusts.

38.     Besides being directly enriched as a result of the monies owed and due but not paid to Plaintiff, the individual Defendants are liable as the Restaurant's owners (actual and/or beneficial), principals and managers.

39.     Upon information and belief, under federal and New York State law each Defendant was an employer or joint employer in relation to Plaintiff, and Plaintiff was an employee in relation to his joint employers.

40.     Upon information and belief, each Defendant has benefited, directly and indirectly, from the wage-related underpayments described herein.

**Defendants' Employment of Plaintiff**

41.     During the time he was employed by Defendants, Plaintiff worked primarily as a dishwasher.

42.     Plaintiff worked as an employee of Defendants from February 2013 to August 2015.

43.     During the time he was employed by Defendants, Plaintiff also worked as a delivery person.

## FIRST CAUSE OF ACTION

## UNPAID OVERTIME IN VIOLATION OF
## THE FAIR LABOR STANDARDS ACT

44.　Plaintiff incorporates the preceding paragraphs by reference.

**Defendants' Status as an Enterprise**

45.　Upon information and belief, Defendants constitute an "enterprise" as that term is defined by 29 U.S.C. § 203(r), in that, at all material times herein, they engaged in related activities performed through unified operation and/or common control for a common business purpose.

46.　At all times mentioned herein, Defendants' employees regularly engaged in interstate commerce in connection with their employment, including, but not limited to:  (a) handling of goods transported from out-of-state, which are then sold in interstate commerce, across state lines; (b) interstate purchases, sales and marketing of goods and materials used in connection with the operation of a restaurant and the operation of an office; (c) handling credit card and other transactions that involve the interstate banking, finance and insurance systems; and (d) transacting business across state lines via interstate telephone calls, text messages, faxes, courier deliveries, and the U.S. Mail.

47.     At all times mentioned herein, Defendants employed employees in and about their business premises in handling, selling, or otherwise working on goods and materials, including, but not limited to, goods and materials used in connection with the operation of a restaurant (including food, beverages, cleaning supplies, etc.), documents, electronic files and other materials which had moved in or been produced for commerce by other persons.

48.     Upon information and belief, at all times mentioned herein the annual dollar volume of business of Defendants was $500,000 or more, and Defendants had at least two employees engaged in commerce.

**Defendants' Record-Keeping Obligations**

49.     Under federal and state law, employers are responsible for keeping detailed records of wages, hours, tips, and other employment information. *See* 29 U.S.C. § 211(c); NYLL § 195(4); NYLL § 661; 12 NYCRR §§ 137-2.1 - 137-2.2; 12 NYCRR §§ 146-2.1 – 146-2.3.

50.     "These requirements are not mere technicalities, but substantive obligations that are 'fundamental underpinnings' of FLSA and critical to ensuring the statute's effectiveness, for an employer's '[f]ailure to keep accurate records can obscure a multitude of minimum wage and overtime

violations.'" *Chan v. Sung Yue Tung Corp.*, 2007 WL 313483 (S.D.N.Y. 2007) (Lynch, J.) (citing cases).

51.    At all times mentioned herein, Defendants failed to comply with the above-referenced record-keeping obligations.

**Plaintiff's Work Schedules**

52.    At all material times herein, Plaintiff worked Monday through Saturday, from 4:30 p.m. to 3:30 a.m.

**Defendants' Failure to Pay Overtime**

53.    At all times mentioned herein, Defendants failed to comply with the FLSA, in that Defendants frequently required and permitted Plaintiff to work more than 40 hours per week, but provision was not made by Defendants to pay Plaintiff at the rate of one and one-half times the regular rate for the hours worked in excess of the hours provided for in the FLSA (29 U.S.C. § 207).

54.    Plaintiff's pay ($360 per week) barely covered the minimum wage owed for the first 40 hours of employment of employment each week.

55.    Defendants never paid Plaintiff one and one-half times the

minimum wage for hours worked in excess of 40 hours per week.

56.     There was never any agreement between Plaintiff and Defendants to compensate Plaintiff for overtime work.

57.     Defendants are and were at all material times herein fully aware that Plaintiff worked more than 40 hours per week without receiving overtime compensation.

58.     Upon information and belief, Defendants are and were at all relevant times herein aware that overtime pay is mandatory for non-exempt employees who work more than 40 hours per week.

**Defendants' Wage and Hour Violations Were Willful**

59.     Defendants' wage and hour violations were deliberate, calculated and willful.

60.     Defendants' willfulness can be inferred from several sources, including, without limitation:  **(a)** Defendants' failure to pay Plaintiff any wage whatsoever (either straight time or time-and-a-half) for most of the overtime hours he worked; **(b)** Defendants' failure to pay Plaintiff any spread-of-hours pay; and **(c)** Defendants' systematic violations of applicable notice and record-keeping laws (not recording Plaintiff's hours, not complying with obligations to

post notices concerning employee rights under the FLSA and New York law,

etc.).

61.     As a result of Defendants' conduct as aforesaid, Defendants are

liable to Plaintiff for the damages set forth in the "Damages" section of this

Complaint.


## SECOND CAUSE OF ACTION

### UNPAID OVERTIME UNDER
### N.Y. COMP.CODES R. & REGS. 12 § 146-1.4
### AND NYLL §§ 663(1) AND 198(1-a)

62.     Plaintiff incorporates the preceding paragraphs by reference.

63.     Defendants failed to comply with, *inter alia*, 12 N.Y. Comp.Codes

R. & Regs. § 146-1.4 (and, in the alternative, and § 142-2.2), and NYLL §§

663(1) and 198(1-a), in that Plaintiff worked for Defendants in excess of the

maximum hours provided by State law, but provision was not made by

Defendants to pay Plaintiff at the rate of 1½ times the regular rate for the hours

worked in excess of the hours provided for by State law.

64.     Defendants are therefore liable under New York law for unpaid

overtime.

65.     In addition to their liability for unpaid overtime under the FLSA and New York law and their liability for compensatory liquidated damages under the FLSA, Defendants, for their willful violations of New York law, are liable under NYLL §§ 663 and 198(1-a) for a liquidated damages penalty equal to 100% of the due and unpaid overtime.

66.     "Because the liquidated damages provisions contained within the FSLA and NYLL, respectively, serve fundamentally different purposes, 'a prevailing plaintiff who can justify both [FLSA] liquidated damages and [NYLL liquidated] damages' is entitled to recover both." *Chen v. Yuen*, 2015 WL 7758532, at *4 (S.D.N.Y. 2015) (Citations omitted); *Lanzetta v. Florio's Enterprises, Inc.*, 08 CIV. 6181 DC, 2011 WL 3209521, at *5 (S.D.N.Y. July 27, 2011) (Chin, J.) (same), quoting *Reilly v. NatWest Mkts. Grp. Inc.,* 181 F.3d 253, 265 (2d Cir.1999); *Hernandez v. Prof'l Maint. & Cleaning Contractors Inc.*, No. 13-CV-2875 FB LB, 2015 WL 128020, at *6 (E.D.N.Y. Jan. 8, 2015) ("The majority of district courts has allowed simultaneous recovery [of FLSA liquidated damages and NYLL liquidated damages] 'because liquidated damages under the FLSA and the NYLL serve different purposes'; one provision is compensatory and the other is punitive.") (citing cases); *Easterly v. Tri-Star Transp. Corp.*, No. 11 CV 6365 VB, 2015 WL 337565, at *7 (S.D.N.Y. Jan. 23, 2015) (same); *Jiaren Wei v. Lingtou Zhengs Corp.*, No. 13-

CV-5164 FB CLP, 2015 WL 739943, at *10 (E.D.N.Y. Feb. 20, 2015) (same);

*Begum v. Ariba Disc., Inc.*, No. 12CV6620 DLC, 2015 WL 223780, at *2

(S.D.N.Y. Jan. 16, 2015) (same).

67.     Based upon the foregoing, Defendants are liable for unpaid

overtime and liquidated damages as set forth in the "Damages" section below.


## THIRD CAUSE OF ACTION

## UNPAID SPREAD OF HOURS PAY
## IN VIOLATION OF NEW YORK LAW

68.     Plaintiff incorporates the preceding paragraphs by reference.

69.     New York law also provides that covered employees, such as

Plaintiff, are entitled to an additional hour's pay at the basic minimum hourly

wage rate for any day in which "the spread of hours" -- defined as "the interval

between the beginning and end of an employee's workday" -- exceeds 10 hours.

12 N.Y. Comp.Codes R. & Regs., §§ 146-1.6, 142-2.1; NYLL § 652(1) and

NYLL § 663(1); *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 339

(S.D.N.Y. 2005).

70.     Accordingly, Defendants are liable for unpaid spread-of-hours pay and liquidated damages In the amounts summarized below in the "Damages" section of this Complaint.

## FOURTH CAUSE OF ACTION

## VIOLATION OF NEW YORK LABOR LAW § 195

71.     Plaintiff incorporates the preceding paragraphs by reference.

72.     NYLL § 195.1(a) provides, in pertinent part, that "Every employer shall":

> provide his or her employees, in writing …, …on or before February first of each subsequent year of the employee's employment with the employer, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; ***; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; ***. Each time the employer provides such notice to an employee, the employer shall obtain from the employee a signed and dated written acknowledgement … of receipt of this notice, which the employer shall preserve and maintain for six years. *** For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the notice must state the regular hourly rate and overtime rate of pay[.]

73.    NYLL § 195(3) provides, in pertinent part, that "Every employer shall":

>  furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; ***; and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

74.    NYLL § 198 further provides, in pertinent part, as follows:

>  1-b. If any employee is not provided within ten business days of his or her first day of employment a notice as required by subdivision one of [Labor Law § 195.1], he or she may recover in a civil action damages of [$50] for each work day that the violations occurred or continue to occur, but not to exceed a total of [$5,000], together with costs and reasonable attorney's fees. ***

>  1-d. If any employee is not provided a statement or statements as required by [Labor Law § 195.3], he or she shall recover in a civil action damages of [$250] for each work day that the violations occurred or continue to occur, but not to exceed a total of [$5,000], together with costs and reasonable attorney's fees. ***

75.     Defendants failed to comply with *any* of the various requirements set forth in NYLL § 195.  As a result, their cumulative civil penalties would exceed the combined statutory maximum of $10,000 under NYLL § 198 (1-b) and (1-d), and are therefore liable in the amount of $10,000 to Plaintiff for said violations, plus attorney's fees and costs.

## FIFTH CAUSE OF ACTION

## UNPAID MINIMUM WAGES UNDER THE FLSA

### (Pleaded in the Alternative to Plaintiff's First Cause of Action)

76.     Plaintiff incorporates the preceding paragraphs by reference.

77.     Almost all of the $360 per week received by Plaintiff should be allocated to the minimum wage payments Defendants owed for the first 40 hours of Plaintiff's employment because Plaintiff could not lawfully agree to accept compensation at a rate far below the minimum wage for working 66 hours a week.  *De Pasquale v. Williams-Bauer Corp.*, 151 F.2d 578, 579-580 (2d Cir. 1945) ("an express agreement to work for less than the statutory rates is invalid"); *Guallpa v. N.Y. Pro Signs Inc.*, *supra*, 2014 WL 2200393, at *3-4 (S.D.N.Y. May 27, 2014) (to same effect); *Morangelli v. Chemed Corp.*, 922 F. Supp. 2d 278, 294 (E.D.N.Y. 2013) (observing that "any agreement [to pay less than the minimum wage] would be void as contrary to public policy"); *See*

*generally United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 879 F.2d 20, 28 (2d Cir. 1989) ("Under both federal and state law, illegal agreements, as well as agreements contrary to public policy, have long been held to be unenforceable and void").

78.    Accordingly, "[l]aws which subsist at the time and place of the making of a contract … enter into and form a part of it, as fully as if they had been expressly referred to or incorporated in its terms." *Norfolk and Western Railway Co. v. American Train and Dispatchers' Ass'n*, 499 U.S. 117, 130 (1991).

79.    If the parties purport to agree on terms that are inconsistent with a statutory duty, "[t]he statute reads itself into the contract, and displaces inconsistent terms." *Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 584 (2d Cir. 2006), *quoting Metropolitan Life Ins. Co. v. Conway*, 252 N.Y. 449, 452 (1930) (Cardozo, C.J.).

80.    In light of the foregoing authority, this cause of action for unpaid minimum wages is pleaded in the alternative, and seeks damages for unpaid minimum wages only in the event the Court declines to apply that legal authority, and concludes instead that the $360 per week that Plaintiff received should not be allocated almost entirely to the first 40 weekly hours Plaintiff

worked, but should instead be allocated evenly across all 66 of the weekly hours Plaintiff worked (an approach which, if accepted, would create an "agreed" hourly wage rate of only $5.45).

81.     In the event the Court chooses the latter approach, then Defendants will be liable for having willfully failed to pay Plaintiff the minimum wages required under the FLSA.  29 U.S.C. § 206(a)(1), and will be liable for alternative damages calculations to be provided in the event the Court chooses the latter approach.

## SIXTH CAUSE OF ACTION

### UNPAID MINIMUM WAGES IN VIOLATION OF THE NYLL AND THE MINIMUM WAGE ORDERS OF THE COMMISSIONER OF THE NEW YORK DEPARTMENT OF LABOR

### (Pleaded in the Alternative to Plaintiff's Second Cause of Action)

82.     Plaintiff incorporates the preceding paragraphs by reference.

83.     The New York hourly minimum wage during Plaintiff's employment was $8.00 from December 31, 2013 to December 31, 2014, and $8.75 from December 31, 2014 through the end of Plaintiff's employment.  *See* NYLL § 652(1); 12 N.Y. Comp.Codes R. & Regs. § 146-1.2 (and, in the alternative, and § 142-2.1).

84.     This cause of action is pleaded in the alternative for the same reasons the preceding cause of action is pleaded in the alternative.  *See also Association of Surrogates and Supreme Court Reporters Within City of New York by O'Leary v. State*, 79 N.Y.2d 39, 45, 580 N.Y.S.2d 153, 155 (1992) (the obligation of the parties' agreement includes "not only the express terms but also the contemporaneous state law pertaining to [their] interpretation and enforcement."), *quoting United States Trust Co. v. New Jersey,* 431 U.S. 1, 19–20, n. 17 (1977).

85.     Accordingly, in the event the Court declines to apply the legal authority cited in this and the preceding cause of action, and concludes instead that the $360 per week that Plaintiff received should not be allocated almost entirely to the first 40 weekly hours Plaintiff worked, but rather to all 66 of the weekly hours Plaintiff worked (an approach which, if accepted, would create an "agreed" hourly wage rate of only $5.45), then Defendants will be liable for having willfully failed to pay Plaintiff the minimum wages required under New York law in amounts to be provided if and when the Court makes such a determination.

## DAMAGES

86.     Defendants' liability for unpaid overtime and liquidated damages

to Plaintiff is estimated as follows:

| Period | Est. OT Hours | Reg. Rate - [minimum wage] | OT Rate | Unpaid OT | Compensatory Liquidated Damages (FLSA) | NYLL Liquidated Damages Penalty. *Chen v. Yuen*, 2015 WL 7758532 (S.D.N.Y. 2015) (majority view: plaintiffs are entitled to recover both FLSA and NYLL liquidated damages) | Total Overtime and Liquidated Damages |
|---|---|---|---|---|---|---|---|
| 2/22/13 - 12/31/15 (46 weeks) | 1,196 | $7.25 | $10.88 | $13,007 | $13,007 | $13,007 | $39,020 |
| 1/01/14- 12/31/14 (52 weeks) | 1352 | $8.00 | $12.00 | $16,224 | $16,224 | $16,224 | $48,672 |
| 1/01/15 - 8/15/15 (33 weeks) | 858 | $8.75 | $13.13 | $11,261 | $11,261 | $11,261 | $33,784 |
| **Total of Est. Overtime and FLSA and NYLL Liquidated Damages** | | | | $40,492 | $40,492 | $40,492 | **$121,475** |

87.     Defendants' liability for unpaid spread of hours pay and liquidated damages to Plaintiff is estimated as follows:

| Period | Est. days worked | Minimum wage | Unpaid Spread of Hours Pay | NYLL Liquidated Damages Penalty | Total Spread Of Hours and Liquidated Damages |
|---|---|---|---|---|---|
| 2/22/13 - 12/31/15 (46 weeks) | 276 | $7.25 | $2,001 | $2,001 | $4,002 |
| 1/01/14- 12/31/14 (52 weeks) | 312 | $8.00 | $2,496 | $2,496 | $4,992 |
| 1/01/15 - 8/15/15 (33 weeks) | 198 | $8.75 | $1,733 | $1,733 | $3,465 |
| **Total Spread Of Hours and Liquidated Damages** | _ | _ | $6,230 | $6,230 | **$12,459** |

## <u>CONCLUSION</u>

WHEREFORE, in addition to prejudgment interest (to the extent compensatory liquidated damages are not awarded) and costs, Plaintiff respectfully request judgment against Defendants as follows:

| | |
|---|---|
| Unpaid Overtime and FLSA and NYLL Liquidated Damages on Overtime Claims | $121,475 |
| Spread-of-Hours Claim and Liquidated Damages on Spread Of Hours Claim | $12,459 |
| Violations of NYLL § 195 | $10,000 |
| Subtotal for Unpaid Overtime, Unpaid Spread-of-Hours Pay, Statutory Damages for Violations of NYLL § 195, and Liquidated Damages | **$143,934** |
| Attorney's Fees | TBD |

Dated:      New York, New York
            June 13, 2016


                        Law Offices of Scott A. Lucas

                        By:    */S/ Scott A. Lucas*
                               Scott A. Lucas
                               250 Park Avenue
                               20th Floor
                               New York, New York 10177
                               (212) 983-6000
                               *Attorneys for Plaintiff Ricardo Ortiz*