LAW OFFICES OF
## SCOTT A. LUCAS
250 Park Avenue
20th Floor
New York, New York 10177

_____

Telephone (212) 983-6000
Fax (212) 983-6008

Of Counsel
ANDREW ROSS SACK
STEVEN MITCHELL SACK

November 27, 2018

Honorable Ronnie Abrams
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY  10007

    Re:   *Ortiz v. Café 71, Inc., et al.*; 16-cv-4412 (RA)(JCF)

Dear Judge Abrams:

    As Plaintiff's counsel, I write in response to the Court's November 20th Order with the expectation that Defendants will consider this information when, consistent with the Court's November 20th Order, Defendants (and not merely Defendants' counsel) undertake to re-determine whether they believe the settlement is fair to them.

    As was stated in motion for settlement approval:

> Plaintiff alleges that he worked 11 hours a day because, according to Plaintiff, he started 30 minutes before his shift and usually worked 30 minutes past the end of his shift, and did not take breaks lasting more than 20 minutes. Defendants, on the other hand, state that Plaintiff's shift was 10 hours, and that Plaintiff had two 30-minute breaks, for 9 hours of work per day.
>
> Defendants' counsel has identified three witnesses who, according to Defendants, will testify that Defendants' version is

Honorable Ronnie Abrams	- 2 -	November 27, 2018

> correct. Plaintiff does not have anyone besides himself to testify that he worked 11-hours per day. Given the conflicting versions, the Defendants' access to supporting witnesses, and the Plaintiff's admitted substantial error with respect to the number of years he worked (i.e., about 1½ rather than 2½, as he originally recalled), it seems reasonable to assume that Plaintiff worked 10 hours a day (rather than 11 hours a day, or 9 hours a day).

Settlement Approval Motion, page 5.

As the settlement approval motion indicates, the overtime and minimum wage chart included in that motion is based on this 10-hour-a-day assumption.  *See* settlement approval motion at page 2, and pages 2-5 (stating that the chart shows "Plaintiff's claims … adjusted using … the assumption of 10 hours of work per day[.]").

While the anticipated recovery of unpaid overtime and minimum wages was based on an assumption of 10 hours of consecutive work per day, there was still a possibility that a fact-finder could conclude that Plaintiff worked more than 10 and up to 11 hours a day either some of the time or all of the time.  Taking the most extreme example, if a fact-finder were to conclude that Plaintiff worked 11 hours a day, and that he did so on 100% of the days that he worked, then Plaintiff would be entitled to unpaid minimum wages of $10,121, unpaid overtime of $10,366, and liquidated damages equal to both of those amounts.  These variables were considered by the parties in their negotiations.

In addition, given the *possibility* of a recovery (although not one that is anticipated) based on 11 hours a day of work, then Defendants would also be justified in considering the corresponding possibility of a recovery of spread-of-hours pay under New York law, which could total as much as $4,650 (i.e., if the 10-hour a day threshold was exceeded on 100% of the days Plaintiff worked), plus an equal amount as liquidated damages.  The spread-of-hours recovery is triggered whenever a workday is "more than 10" hours.  Even if a jury found Plaintiff 50% of the time came in a few minutes early or left a few minutes late, the spread-of-hours pay provisions of NYLL would require an additional hour be paid for each instance, plus liquidated damages.  The parties compromised the extremes in their

Honorable Ronnie Abrams — - 3 - — November 27, 2018

respective recollections (i.e., 9 hours of work, as recalled by Defendants, and 11 hours of work, as recalled by Plaintiff) in their negotiations.

    Further, under the version of NY Labor Law 198 in effect during Plaintiff's employment, Plaintiff would also have very likely recovered an extra $2,500 in notice-related statutory penalties under NYLL 198(1-b) and an extra $2,500 in notice-related statutory penalties under NYLL 198(1-d).

    Finally, and most important, litigating and trying a lawsuit is time-consuming and expensive. By settling the case instead of trying it both parties avoided the expenditure of tens of thousands of additional dollars in legal fees, and Defendants avoided having to pay Plaintiff's counsel tens of thousands of additional dollars in legal fees in the event of adverse rulings or findings of fact. Accordingly, by settling the case Defendants were probably spared $50,000 to $100,000 or more in additional legal fee payments.

    The settlement is the product of arm's length negotiation and each party's assessment of the benefits of resolving the dispute at this stage as opposed to the risks and costs of continuing the litigation. We appreciate the Court's inquiry and trust the above descriptions of the parties' adversarial negotiations have addressed the Court's concerns of fairness to the Defendants. Accordingly, as the Defendants have previously agreed to the compromises outlined above resulting in the proposed settlement amount of $57,000, Plaintiff respectfully requests that the Court approve the proposed settlement agreement.

    Respectfully submitted,

    Law Offices of Scott A. Lucas

    By   */S/ Scott A. Lucas*

Cc: Douglas Weiner, Esq. (via ECF)    Scott A. Lucas